Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| JOSÉ SIERRA WESTON<br>Recurrente<br><br><br>v.<br><br><br>R&R MOBILITY SOLUTIONS CORP.<br>Recurrido | KLRA202400647 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor<br><br>*Querella Núm. SAN-2024-0018020*<br><br>Sobre:<br>Equipo de Asistencia Tecnológica (Ley Núm. 402 del 9 de septiembre de 2000) |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de marzo de 2025.

Comparece el señor José Sierra Weston (señor Sierra Weston o parte recurrente), solicitando la revisión de una *Resolución* emitida el 30 de septiembre de 2024 por el Departamento de Asuntos del Consumidor (DACo). En dicho dictamen el DACo declaró *No Ha Lugar* la querella que el señor Sierra Weston presentó en contra de R&R Mobility Solutions Corp. (R&R o parte recurrida), por consiguiente, ordenó el cierre y archivo de esta.

Insatisfecho, el recurrente acude ante nosotros aduciendo que el DACo no le permitió presentar su prueba en la vista administrativa celebrada, y debió haber decretado la resolución del contrato suscrito entre las partes pues intervino dolo. No nos persuade, decidimos *Confirmar*.

NÚMERO IDENTIFICADOR

SEN2025_____

## I. Resumen del tracto procesal

Según surge del expediente ante nosotros, el señor Sierra Weston estaba interesado en adquirir una silla ascensor para poder tener acceso a su propiedad, la cual queda ubicada en un segundo piso. Para ese propósito se comunicó con R&R, corporación organizada bajo las leyes de Puerto Rico. De conformidad, el 11 de julio de 2022, R&R le entregó una propuesta al señor Sierra Weston, que incluía la venta e instalación de una silla ascensor de un riel.[1]

Luego de ello, personal de R&R acudió a la residencia del señor Sierra Weston en cuatro ocasiones para tomar medidas, determinar sobre qué equipo venderle y qué garantía. A partir de lo cual, aunque inicialmente se había contemplado que el equipo fuera de un solo riel, luego R&R recomendó que fuera de dos rieles.

El señor Sierra Weston aceptó la segunda propuesta presentada por R&R, basada en la venta de una silla ascensor con dos rieles. La propuesta no fue firmada por la parte recurrente, sin embargo, este pagó la cantidad total de $22,198.67 por la silla ascensor.

De conformidad, R&R comenzó a instalar la silla ascensor a finales de noviembre de 2022, culminando la primera semana de diciembre del mismo año. Una vez instalado el equipo, se realizaron las pruebas correspondientes y el mismo no funcionó, por lo que R&R procedió a realizar varios ajustes y entonces la silla ascensor funcionó adecuadamente.

Transcurrido algún tiempo, el equipo se detuvo, en consecuencia, el señor Sierra Weston se comunicó con R&R para informarle lo sucedido.

A raíz de esto, el 17 de febrero de 2023, el técnico Víctor Vega Figueroa (técnico Vega Figueroa) acudió a verificar la silla ascensor,

---

[1] Apéndice del recurso de revisión judicial, p. 90.

percatándose que estaba fuera de la *zona carga.* La *zona de carga* se entiende que es el punto A y el punto B, es decir, los extremos de las instalaciones de los rieles. Entonces, a solicitud del señor Sierra Weston, la silla ascensor fue modificada para mover las zonas de carga a un pie de distancia de la instalación original. La modificación no fue aceptada por la fábrica, no obstante, en esa ocasión R&R brindó garantía y reemplazaron la tarjeta "board" que estaba dañada. Concluido el reemplazo de la tarjeta "board", la parte recurrida realizó una prueba de campo y dejó el equipo funcionando. De igual forma, ese día R&R le entregó al señor Sierra Weston el *Final Acceptance.*[2]

Tiempo después, en agosto de 2023, R&R acudió nuevamente a la residencia del señor Sierra Weston, pues la silla ascensor no tenía energía. Al llegar, R&R se percató que el equipo no cargaba bien en la zona de carga, debido a la modificación de un pie de distancia de la instalación original. De igual forma, el técnico Vega Figueroa notó que la silla ascensor daba brincos en el primer trayecto del riel y en el último, por consiguiente, se comunicó con la fábrica y la misma honró la garantía de los rieles. Así pues, la parte recurrida desmontó el equipo e instaló todo nuevamente, y el señor Sierra Weston quedó conforme con la labor realizada.

No obstante, el equipo seguía confrontando fallas y, en diciembre de 2023, el señor Sierra Weston se comunicó con R&R para informar que había problemas con la batería, por lo que la silla ascensor no contaba con energía. Al pasar a examinarla, R&R encontró nuevamente la silla ascensor fuera de la zona de carga. Con todo, el técnico Vega Figueroa cambió las baterías y el equipo funcionó sin ningún problema. En esa misma visita, el señor Sierra Weston solicitó una batería y un motor más

---

[2] A pesar de que la carta de *Final Acceptance* tenía fecha del 17 de febrero de 2023, fue firmada por las partes el 17 de abril de 2023, donde el señor Sierra Weston plasmó no haber quedado satisfecho con la labor realizada.

grande, pero la fábrica no aceptó dicha solicitud. Se explicó que esto se debía que las medidas de la distancia de la escalera de la residencia eran alrededor de cincuenta (50) a cincuenta y cinco (55) pies, por tanto, la silla ascensor se podía usar cuatro (4) veces al día. También se adujo que tal información se le había brindado al recurrente desde el inicio de la propuesta, y este había aceptado adquirir el equipo a sabiendas que solo podía dar cuatro (4) viajes al día.

Es así que el señor Sierra Weston presentó una Querella ante el DACo, en la que se adujo que: luego de haber tenido muchos problemas con la silla elevador, aceptó hacer el pago final al recurrido bajo protesta; que el contratista nunca apareció a subsanar la instalación pobre del sistema de cargar las baterías; por lo que solicitaba como remedio que se cumpliera con la garantía y se le proveyera servicio a la unidad, además de lo que procediera en derecho.

En respuesta, el 7 de marzo de 2024, R&R radicó contestación a la querella, negando *rotundamente* la descripción de los hechos narrados por el señor Sierra Weston, y aportando información sobre lo que, a su juicio, realmente ocurrió.

En cualquier caso, en abril de 2024, el técnico Vega Figueroa se personó nuevamente a la residencia del señor Sierra Weston, pero en esta ocasión estuvo acompañado del señor Epifanio Ocasio, otro técnico de la compañía. Estos encontraron de nuevo las baterías agotadas, pues la silla ascensor estaba fuera de la zona de carga. Seguido de lo cual, los técnicos removieron el equipo, hicieron varias pruebas de campo, y siguió funcionando correctamente.

Con todo, el 9 de mayo de 2024, el señor Sierra Weston le envió un correo electrónico a DACo, solicitando conocer el estatus de su caso, y el el 27 de septiembre de 2024 presentó una *Moción* requiriéndole a la agencia resolver el asunto.

El 17 de julio de 2024, se llevó a cabo la Vista Administrativa, en la cual compareció: el señor Sierra Weston, por derecho propio, y el señor Juan Rivera Rodríguez, presidente y agente residente de R&R, junto al técnico Vega Figueroa, mediante representación legal. Las partes tuvieron oportunidad de presentar la prueba documental y testifical que entendieron pertinente.

Evaluados los testimonios de las partes y la prueba documental, el 30 de septiembre de 2024, el DACo emitió la *Resolución* cuya revocación nos solicita el recurrente, declarando *No Ha Lugar* la querella presentada, en consecuencia, ordenando su cierre y archivo. En su dictamen el DACo realizó las siguientes determinaciones de hechos:

1. La parte querellante se identifica como José Sierra Weston, mayor de edad, con dirección postal: 560 Trigo ST APT. 2, San Juan, PR 00907, y correo electrónico: joselsierra.pe@gmail.com.

2. La parte querellada se identifica como R&R MOBILITY SOLUTION CORP., corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, debidamente inscrita en el Departamento de Estado bajo el numero de registro 128165, con dirección postal: PO BOX 194960, San Juan, PR, 00919.

3. La parte querellante estaba interesada en adquirir una silla ascensor para poder tener acceso a su propiedad, que es en un segundo nivel.

4. La parte querellante se contactó con la parte querellada en verano de 2022. El 11 de julio de 2022, la parte querellada le entregó a la parte querellante una propuesta para la compraventa de la silla ascensor. Esta propuesta consistía en la instalación de un equipo de un riel.

5. Personal de la parte querellada acudió en 4 ocasiones a la residencia de la parte querellante para tomar medidas, ya que la fábrica necesitaba las medidas correctas para poder vender el equipo y posteriormente brindar la garantía. La fábrica no autorizó el equipo *indoor* [un riel] y recomendó uno *outdoor* [dos rieles], ya que la escalera daba a la marquesina. La fábrica recomendó una silla ascensor outdoor [modelo 2000], con dos rieles. El querellante aceptó este nuevo modelo.

6. El 7 de agosto de 2022, la parte querellada le entregó la segunda propuesta a la parte querellante esta consistía en la venta de una silla ascensor, con dos rieles [outdoor, modelo

2000]. Esta propuesta se convirtió el contrato entre las partes.

7. El equipo outdoor comenzó a instalarse a finales de noviembre y culminó en la primera semana de diciembre de 2022, la parte querellada estuvo alrededor de 5-7 días realizando la instalación. Se hicieron las pruebas, el equipo no funcionaba, se corrigió y funcionó adecuadamente.

8. En febrero de 2023, el equipo se detuvo. Al acudir la parte querellada a verificar el equipo, se percataron que el equipo estaba fuera de la zona de carga. La zona de carga es un punto A y punto B, cada extremo de la instalación de los rieles. El equipo carga en cada uno de estos puntos. El equipo fue modificado, a solicitud del querellante, dicha modificación no fue aceptada por fábrica, para mover las zonas de carga a un pie de distancia de la instalación original. En esta ocasión la parte querellada brindó la garantía [tarjeta dañada-board], se reemplazó la tarjeta. La parte querellada hizo la prueba de campo, y dejó el equipo funcionando. En adición, la parte querellada le entregó al querellante el *Final Acceptance.*

9. En agosto 2023, la parte querellada acudió nuevamente a la residencia del querellante, ya que el equipo no tenía energía, al acudir a la residencia del querellante, se percataron que el equipo no estaba cargando bien en la zona de carga, esto debido a la manipulación hecha, al mover un pide de distancia de la instalación original. En adición, el técnico que acudió a la residencia de la parte querellante notó que la silla ascensor daba un cantazo en el primer y último diente de los rieles. Por lo que la parte querellada se comunicó con la fábrica, fábrica honró la garantía. La parte querellada desmontó el equipo e instaló nuevamente todo. Este trabajo duro alrededor de 3 días. La parte querellante quedó satisfecha con la labor realizada.

10. En diciembre 2023, el querellante volvió a reclamar. La parte querellada encontró nuevamente el mismo problema, equipo fuera de la zona de carga. Se reemplazaron las baterías.

11. La parte querellante solicitó una batería y motor más grande. La fábrica no lo aceptó. No lo autorizó por pie lineal. Las medidas en distancia en la escalera de la residencia de la parte querellante son alrededor de 50-55 pies.

12. Por las medidas en la escalera de la parte querellante, este podía usar la silla 4 veces al día, podía dar 4 viajes al día, en la silla, entre subir y bajar.

13. Esta información fue divulgada a la parte querellante y la parte querellante aceptó comprar sabiendo que podía dar 4 viajes al día.

14. Ante las constantes reclamaciones de la parte querellante, la parte querellada recibió un correo electrónico de la fábrica en donde se le indicaba que, como se le había

dicho anteriormente al querellante, la silla no podía dar más de 4 viaje al día.

15. En abril de 2024, el técnico [Víctor Vega] acudió nuevamente a la residencia de la parte querellante, en esta ocasión con Epifanio [otro técnico del equipo], se encontró nuevamente baterías agotadas, ya que la silla ascensor estaba fuera de la zona de carga. Aquí se percataron que el riel tenía un "cantazo" por eso ahí daba como un brinco.

16. La parte querellante presentó la querella de epígrafe solicitando la resolución del contrato.

17. La parte querellante utilizaba la silla ascensor para movilizarse y para subir y bajar adultos mayores en fiestas que hacía en su residencia, en diciembre de 2022, y en abril de 2023.

18. La garantía del equipo era por 12 meses.

19. La parte querellante pagó la cantidad total de $22,198.67, por la silla ascensor.

20. El querellante utilizó de manera inadecuada la silla ascensor.

21. El equipo tenía un cable suelto "guindando", un tercero la reparó.

Inconforme, la parte recurrente presentó una *Moción en Solicitud de Reconsideración* ante el DACo, arguyendo que se le violó su debido proceso de ley, al no permitírsele presentar su prueba en la vista celebrada, de manera amplia y completa.

El DACo declaró *No Ha Lugar* la *Moción en Solicitud de Reconsideración.*

En consecuencia, el señor Sierra Weston acude ante nosotros, mediante recurso de *revisión judicial*, señalando la comisión de los siguientes errores:

Primer Error: Erró el DACo al no decretar la resolución del contrato sin haber oído el testimonio completo del apelante-recurrente ni haberle permitido presentar su prueba durante la vista administrativa llevada a cabo en el caso aplicando las reglas de evidencia de manera estricta derrotando los preceptos del proceso administrativo.

Segundo Error: Erró el DACo al no decretar la resolución del contrato por dolo, nunca se le dejó saber al apelante-recurrente las consecuencias de los cambios en la

instalación del producto vendido iban a causar todos los problemas luego de instalados.

Por su parte, el 21 de enero de 2025, R&R presentó su *Oposición y/o Solicitud de Desestimación de Recurso de Revisión Administrativa.*

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II. Exposición de Derecho

El Art. 4.002 de la Ley Núm. 201-2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, según enmendada, dispone que el Tribunal de Apelaciones revisará, como cuestión de derecho, las decisiones finales de los organismos y agencias administrativas que hayan sido tramitadas conforme con las disposiciones de la Ley Núm. 37-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 4 LPRA sec. 24 (u). En consonancia, la Regla 56 de nuestro Reglamento, provee para que este foro intermedio revise las decisiones, los reglamentos, las órdenes y las resoluciones finales dictadas por organismos o agencias administrativas. Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.56.

Es un principio reiterado que las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008); *Matos v. Junta Examinadora,* 165 DPR 741, 754 (2005). Lo anterior se fundamenta en el conocimiento especializado y la experiencia *(expertise)* sobre la materia que su ley habilitadora le confiere. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997); *Misión Ind. PR v. J.P. y A.A.A.,* 142 DPR 656, 672-673 (1997). En virtud de lo cual, el ejercicio de revisión judicial debe deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Depto.*

*Corrección*, 208 DPR 656, 674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

En este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de LPAU, 3 LPRA § 9675, según enmendada, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no queda limitada conforme a la siguiente norma:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Íd.*

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una

conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R. v. J.P.*, supra, pág. 131. Además, ese alto foro ha reiterado que:

> Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397-398 (1999); *Metropolitana S.E. v. A.R.P.e.*, 138 DPR 200, 213 (1995); *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953).

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador de forma que este no pueda concluir que la decisión de la agencia fue justa porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, Inc.*, supra, pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999) (Énfasis nuestro).

**III. Aplicación del Derecho a los hechos**

a.

Al discutir el primer señalamiento de error el recurrente aduce que, *se utilizaron las Reglas de Evidencia para obstaculizar la presentación de su prueba*. Como fundamento para ello alega que, en la vista, al señor Sierra Weston no se le permitió utilizar documentos para refrescar la memoria y contestar las preguntas formuladas por las partes, lo que le provocó un estado de indefensión. Nos refiere el carácter flexible de las vistas administrativas como justificante para haberle

permitido utilizar documentación con el propósito de *refrescarse la memoria.*

Lo primero que nos llama la atención al atender dicho señalamiento de error es que, en el recurso presentado, el recurrente no nos pusiera en posición de identificar el momento exacto de la vista administrativa cuando presuntamente se le obstaculizó la presentación de la prueba a la que alude. Es de ver que, para tal propósito, el recurrente solo nos refirió al total de su testimonio en la vista celebrada, aludiendo a las páginas 107 a la 260 de la transcripción de la vista presentada[3], sin mostrar esfuerzo alguno en particularizar cuándo ocurrió el alegado error. Tampoco se hizo alusión, identificó, ni discutió alguna regla de evidencia que resultara lesionada, no obstante haber hecho referencia al concepto probatorio de utilizar el documento para *refrescarse la memoria.*

A pesar del recurrente no haber cumplido con lo señalado en el párrafo que antecede, lo cierto es que, de la transcripción de la prueba testifical surge que desde el inicio de su testimonio, este pretendió leer un documento redactado por él mismo, que presuntamente contenía el historial del caso. Fue ante esto que la juez administrativa instruyó al recurrente que tenía que basar el testimonio en lo que recordara.[4]

Entonces, si fuéramos a recurrir a las Reglas de Evidencia para ser aplicadas al ámbito de la vista administrativa celebrada, la Regla 613 de Evidencia, 32 LPRA Ap. VI, R. 613, en particular es la que rige lo referente a escritos para refrescar memoria. Sin embargo, por la descripción que el propio señor Sierra Weston ofrece de los acontecimientos en la vista, este pretendía utilizar el documento en cuestión, no para revivir memoria, sino para leerlo en la vista, lo cual se aparta del propósito del escrito para *refrescar memoria.* En tal caso, lo

---

[3] Ver página 11 del recurso de revisión judicial.
[4] Véase, transcripción de la vista administrativa, págs. 9-11.

que hubiese correspondido era tratar de lograr la admisión de dicho escrito como uno *de pasada memoria*, según lo concibe la Regla 805(e) de Evidencia, 32 LPRA Ap. VI, R. 805(3), pero ello no fue planteado ante el DACo, ni ante este foro apelativo, de manera que estamos impedidos de discutirlo. Tampoco aparenta que se hubiese cumplido con los requerimientos que surgen de la Regla 104(a) y (b) de las de Evidencia, 32 LPRA Ap. VI, R. Regla 104(a) y (b), sobre la exclusión errónea de prueba; ni con la Regla 105 del mismo cuerpo reglamentario, 32 LPRA Ap. VI, R. 105, que establece, en lo que concierne, que no se dejará sin efecto una determinación sobre exclusión de evidencia, cuando la parte hubiese incumplido con presentar oportuna objeción y haber hecho oferta de prueba, o cuando ello comporte una violación a un derecho constitucional.

En cualquier caso, aunque, por una parte, cabe reconocer que nuestro Tribunal Supremo ha establecido que en un procedimiento adjudicativo administrativo se pueden adoptar las normas o principios fundamentales de las Reglas de Evidencia, cuando estas no son incompatibles con el procedimiento y sirvan para lograr una solución justa, rápida y económica de la controversia, *O.E.G. v. Rodríguez*, 159 DPR 98, 112 (2003), por otra, prevalece nuestra función revisora respecto a las actuaciones administrativas, limitada a determinar si la agencia actuó de forma arbitraria, ilegal o tan irrazonablemente que implique abuso de discreción. *OCS v. Point Guard,* supra. Al realizar tal ejercicio revisor, frente a la alegada falta del DACo al impedir que el recurrente leyera todo el documento que se proponía, no podemos identificar la arbitrariedad o irrazonabilidad en el curso decisorio elegido que justifique nuestra intervención. Contrario a lo aducido por el recurrente, la juez administradora permitió al recurrente desfilar la

prueba que entendió pertinente, y lo escuchó testificar ampliamente, el primer error no fue cometido.

b.

Mediante su segundo señalamiento de error el recurrente sostiene que el DACo debió resolver el contrato entre las partes, al haber intervenido conducta dolosa por parte de R&R. Fundamenta tal afirmación en el cambio de cotización que aconteció referente al equipo comprado, sin la entrega de alguna documentación que los incluyera, y sabiendo R&R que los cambios no cumplirían con los usos al que iba a ser destinada la silla-elevador.

Iniciamos por apuntar que, al examinar la Querella que dio lugar a la celebración de la vista administrativa, no encontramos alegaciones sobre presunta conducta dolosa imputable a R&R, sino que el recurrente solo expresó su aspiración al cumplimiento de los términos de la garantía del equipo vendido, para recibir el servicio necesario. Además, en el recurso de revisión judicial no se identificó en qué momento, si alguno, fue enmendada la referida Querella en ánimos de incluir una reclamación por dolo. Por tanto, no habiendo sido planteado una alegación de dolo ante el DACo, tampoco se podía alzar tal argumentación por primera vez a nivel apelativo, por lo que corresponde rechazar tal pretensión.

A pesar de afirmar lo anterior, de todos modos, nos resulta evidente que no se probó la comisión el supuesto dolo aducido.

La responsabilidad de la prueba del dolo corresponde a quien reclama la conducta dolosa. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 668 (1997). El dolo no se presume, sin embargo, ello no significa que se tenga que probar directamente. *Íd.*, pág. 669. Ahora bien, "[p]ara probar el dolo hay que demostrar la falta intencional o mala fe de la

persona a quien se le imputa, ya que la buena fe se presume". *Canales v. Pan American*, 112 DPR 329, 339 (1982).

En el caso de autos, el señor Sierra Weston en ningún momento testificó que se le vendió una silla ascensor en sustitución de otra sin su consentimiento. Al contrario, este aceptó bajo juramento que recibió las especificaciones, el manual y las garantías de la silla ascensor "outdoor" cuando se le instaló el equipo. A través de la prueba testifical vertida, la representación legal de R&R fue puntillosa al dejar establecido el conocimiento del recurrente, un ingeniero, de todos los procedimientos que precedieron a la compra del equipo, de las modificaciones solicitadas e implementadas, y las advertencias sobre su debido uso. No podemos apreciar mala fe o intencionalidad de engaño causantes de dolo en la conducta de R&R.

En definitiva, concluimos que la determinación recurrida está basada en evidencia sustancial, que no fue debidamente controvertida por el señor Sierra Weston. Más aun, no avistamos cercanía a una decisión arbitraria, ilegal o irrazonable en la *Resolución* recurrida que nos impulse o justifique nuestra intervención con la deferencia que debemos al resultado de la determinación alcanzada por el foro administrativo.

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se *confirma* la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones